1  Joseph W. Cotchett (SBN 36324)
   jcotchett@cpmlegal.com
2  Philip L. Gregory (SBN 95217)
   pgregory@cpmlegal.com
3  Sean E. Ponist  (SBN 204712)
   sponist@cpmlegal.com
4  Joseph C. Wilson (SBN 249027)
   jwilson@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
6  Burlingame, CA 94010
   Telephone:  (650) 697-6000
7  Facsimile:  (650) 697-0577

8  William G. Bertain  (SBN 70163)                    Edgar B. Washburn (SBN 34038)
   bbertain@suddenlink.net                            ewashburn@mofo.com
9  **LAW OFFICE OF WILLIAM G. BERTAIN**               Christopher J. Carr (SBN 184076)
   1310 Sixth Street                                  ccarr@mofo.com
10 Eureka, CA 95501                                   William M. Sloan (SBN 203583)
   Telephone: (707) 443-5078                          wsloan@mofo.com
11 Facsimile: (707) 443-4998                          Shaye Diveley (SBN 215602)
                                                      sdiveley@mofo.com
12 Paul N. "Pete" McCloskey, Jr.  (SBN 24541)         **MORRISON & FOERSTER, LLP**
   **LAW OFFICES OF PAUL N. McCLOSKEY, JR.**          425 Market Street
13 600 Allerton Street, Suite 202                     San Francisco, CA 94105
   Redwood City, CA 94063                             Telephone: (415) 268-7000
14 Telephone: (650) 568-3110                          Facsimile: (415) 268-7522
   Facsimile: (650) 568-3376
15
   Attorneys for Plaintiff                            Attorneys for Defendants
16                                                    MAXXAM INC., and Charles E.
                                                      Hurwitz
17

18                  **UNITED STATES DISTRICT COURT**

19                 **NORTHERN DISTRICT OF CALIFORNIA**

20  UNITED STATES OF AMERICA, *ex rel.*  )  Case No. C-06-7497 CW
    RICHARD WILSON and CHRIS           )
21  MARANTO,                           )  **JOINT DISCOVERY PLAN AND ORDER**
                                       )
22           Plaintiff,                )  Judge:       Hon. Claudia Wilken
                                       )
23       v.                            )
                                       )
24  MAXXAM INC., a Delaware corporation; )
    THE PACIFIC LUMBER COMPANY, a     )
25  Delaware corporation; SCOTIA PACIFIC )
    COMPANY LLC, a Delaware limited    )
26  liability company; SALMON CREEK LLC, )
    a Delaware limited liability company; )
27  CHARLES E. HURWITZ, an individual,  )
                                       )
28           Defendants.               )
                                       )

1

**TABLE OF CONTENTS**

2
                                                                        Page

3   JOINT DISCOVERY PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   I.        PRE-DISCOVERY DISCLOSURES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.       DISCOVERY PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6             A.      Subjects Identified by Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7             B.      Subjects Identified by Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8             C.      Reservation of Objections to Scope of Discovery . . . . . . . . . . . . . . . . . . . . 5

9             D.      Written Discovery Limits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10            E.      Production of Electronically Stored Information ("ESI"). . . . . . . . . . . . . . . 6

11            F.      Privilege Logs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12            G.      Assertions of Privilege as to Inadvertently Produced Materials . . . . . . . . . . . . 8

13            H.      Depositions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14            I.      Expert Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15            J.      Amendment of Previously Served Discovery Requests . . . . . . . . . . . . . . . . . 10

16            K.      Discovery Deadlines. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**JOINT DISCOVERY PLAN AND ORDER- CASE NO. C-06-7497**                                              i

1

**JOINT DISCOVERY PLAN**

2    The parties in the above-entitled action submit this Joint Report Pursuant to Federal Rule

3    of Civil Procedure 26(f) and Civil Local Rule 16-9.  Sean E. Ponist of Cotchett, Pitre &

4    McCarthy, counsel for  Relators Richard Wilson and Chris Maranto, suing on behalf of the

5    United States of America ("Plaintiff"), and Christopher J. Carr of Morrison & Foerster LLP,

6    counsel for Maxxam Inc., The Pacific Lumber Company, Scotia Pacific Company LLC, Salmon

7    Creek LLC, Charles E. Hurwitz ("Defendants"), met telephonically on March 17, 2008 and

8    corresponded subsequently thereafter and discussed the matters set forth herein.  Based on that

9    meeting and subsequent written and oral correspondence between counsel, the parties report to

10   this Court as follows:

11   **I.       PRE-DISCOVERY DISCLOSURES.**

12   The parties will exchange the information required by Federal Rule of Civil Procedure

13   26(a)(1) on or before April 18, 2008.

14   **II.      DISCOVERY PLAN.**

15   The parties jointly propose the following discovery plan which incorporates the Court's

16   prior orders and includes further detail regarding the matters set forth herein.  The parties agree

17   that they are entitled to discovery on any matter relevant to any claim or defense, or that may

18   lead to the discovery of relevant evidence.

19          A.       <u>Subjects Identified by Plaintiffs</u>

20   Plaintiffs identify the following subjects as ones with respect to which they intend to

21   conduct discovery:

22                 1.       Whether Defendants' sustained yield plan ("SYP") was fabricated, and in

23                          that connection:

24                          (a)      Whether Defendants' computer simulation was based on the

25                                   inclusion of hardwood measures;

26                          (b)      Whether the written SYP plan and actual on-the-ground

27                                   implementation of the SYP was based on conifer measures only.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**JOINT DISCOVERY PLAN AND ORDER- CASE NO. C-06-7497**                                                   1

2.     Whether Defendants' SYP computer simulation strategy resulted in projections for conifer harvest that could not be achieved from those specific forest stands selected for harvest in the first 10-year planning period.

3.     Whether Defendants obtained approval for an unsupportable, excessive rate of cutting.

4.     Whether Defendants misled the California Department of Forestry and Fire Protection ("CDF") to approve the inflated SYP.

5.     Whether Defendants deceived the state and federal governments into paying over $360 million in cash and property for the Headwaters and Elk Head Springs lands, the protection of Pacific Lumber Company's surrounding land, and an accurate and truthful SYP.

6.     Whether Defendants made false claims for payment of the purchase price of the Headwaters and Elk Head Springs Forest lands by submitting to the CDF an SYP that falsely represented as sustainable the projected harvest yields of their remaining land.

7.     Whether Defendants falsified their computer simulation to obtain approval of the SYP.

8.      Whether Defendants manipulated its modeling parameters to obtain approval to harvest sufficient timber to enable them to make interests payments on close to a billion dollars of timber bonds issued in August 1998.

9.     Whether the operating losses that Defendants contended they were sustaining was the a function of corporate indebtedness, rather than any restrictions on its timber harvesting practices.

10.    Whether Defendants understood that the commitments they were making pursuant to the SYP and habitat conservation plan ("HCP") were part of the consideration for the Headwaters transaction.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

11.     Whether Defendant Hurwitz was paid for his assistance in securing the Headwaters agreement.

12.     Whether Defendants falsified the computer simulation parameters in their SYP analysis.

13.     Whether CDF would have approved the SYP had it been informed of the manipulated SYP model put forth by Defendants.

14.     Whether Defendants were the alter egos of one another, so that the individuality and separateness of each entity Defendant, if such individuality and separateness ever existed, has ceased.

15.     Whether Defendants were agents, aiders and abettors and conspirators of the improper act, plans, schemes, and transactions that are the subject of the complaint.

16.     Whether each Defendant was the agent, servant, employee and/or joint venturer of each of the remaining Defendants.

17.     Whether each Defendant is responsible in some manner for the events referred to in the complaint.

18.     Whether each Defendant is responsible for the damages sustained by the United States as alleged in the complaint.

19.     Whether Defendants knowingly and willingly conspired and agreed among themselves to engage in a fraudulent scheme the purposes of which included, but were not limited to, violation of 31 U.S.C. § 3729(a) as alleged in the complaint.

20.     Whether Defendants conspired with each other to have false or fraudulent claims allowed and paid as alleged in the complaint.

21.     Whether one or more Defendants acted in furtherance of the conspiracy and the United States Government sustained damages as a result thereof.


LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

22.  Whether Defendants transferred the Pacific Lumber Company debt to Scotia Pacific Holding, rather than use the lucrative proceeds of their accelerated timber harvest to retire the junk bond debt.

23.  Whether Pacific Lumber Company formed Scotia Pacific Holding Company in December of 1992, capitalizing it via an issuance of $235 million of junk bonds with a yield of 10.5%.

24.  Whether in June 1998, Pacific Lumber Company formed Scotia Pacific as a limited liability company, and soon thereafter Scotia Pacific issued $867,248,000 in timber notes and the prospectuses and other financial disclosures related thereto.

25.  The April 2005 Gjerde Report, as referenced in paragraphs 52-55 of the complaint.

26.  The July 1998 Prospectus for the $867 million Timber Collateralized Bond Issuance

B.   Subjects Identified by Defendants

Defendants identify the following subjects as ones with respect to which they intend to conduct discovery:

1.  Whether the allegations in the Complaint were publicly disclosed and when.

2.  Whether Maranto is an original source of the information upon which the allegations in the Complaint are based.

3.  Whether Wilson is an original source of the information upon which the allegations in the Complaint are based.

4.  When Maranto "discovered" the alleged fraudulent conduct.

5.  When Wilson "discovered" the alleged fraudulent conduct.

6.  Maranto's responsibilities during his tenure at the California Department of Forestry and Fire Protection.

7.  Maranto's background, qualifications and experience.



LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT DISCOVERY PLAN AND ORDER- CASE NO. C-06-7497**                                          4

8.     Wilson's responsibilities during his tenure at the California Department of Forestry and Fire Protection.

9.     Wilson's background, qualifications and experience.

C.     <u>Reservation of Objections to Scope of Discovery</u>

The parties do not waive any objections they may have to discovery of the subject matters identified by each other.  While the parties believe that many of the subjects identified are appropriate subjects of discovery, they disagree with certain characterizations of those subjects.  Rather than object to the subjects identified or to the characterizations of those subjections at this time, the parties agree that they may reserve the right to object to the scope of discovery.

D.     <u>Written Discovery Limits</u>.

Federal Rules of Civil Procedure 33, 34, 35 and 36 will apply to written discovery in this action.

1.     <u>Interrogatories</u>.  The parties agree that each side will propound no more than 25 interrogatories to the other side absent leave of court or written stipulation.

2.     <u>Production of Publicly Available Documents</u>.  The parties agree that, with respect to publicly available documents, a party responding to a request for production may specifically identify the responsive publicly available documents in lieu of producing them, including:

(a)     The title of each responsive publicly available document;

(b)     The internet address at which that document can be found, if known to the responding party; and

(c)     Should the propounding party not be able to readily obtain a copy of the document (*i.e.*, if the document is not readily accessible on an internet website), the responding party will produce a copy of the document to the propounding party within ten days after the propounding party requests the document in writing.

3.     <u>Authentication of Publicly Available Documents</u>.  Should a party responding to a document request identify a publicly available document that has been filed with

a governmental agency and is available from that governmental agency's website in lieu of producing the document, the responding party will not thereafter object to the genuineness of that document if retrieved from that governmental agency's website and accompanied by a declaration of the requesting party's counsel or an employee of the requesting party's counsel stating that they have retrieved the document from the governmental website identified by the responding party absent good reason to believe that the downloaded document is incomplete or is inconsistent with the on-line version.

      E.     Production of Electronically Stored Information ("ESI").

      1.     Obligation to Produce ESI.  The parties acknowledge and agree that to the extent they possess electronically stored information ("ESI") responsive to a document request, that ESI is within the scope of matters subject to discovery in this case.

      2.     Production of Native Format Documents.  ESI may be produced using one of the three following methods, which method will be subject to meet and confer between the parties.  For any ESI that exists in encrypted format or is password-protected, the producing party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords).

      (a)     Emails.  Emails may be produced in native format, such as .pst, .nsf, .edb, et c. The method produced will be subject to further meet and confer between the parties.

      (b)     ESI That is Practical to Produce with Links.  ESI (for example, spreadsheets, word processing documents, presentations) may be produced in electronic format suitable for loading to a litigation support database with links to the native files.  ESI produced in native file format will be assigned a unique DocID number within the litigation database.  The producing party will provide a litigation database load file which will contain, as one of the fields, the MD-5 hash value of each file produced in native format.

      (c)     ESI That is Impractical to Produce with Links to a Database.  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format documents with links to a litigation

database.  For example, when data existing originally in Primavera, MS Access, Oracle, and Microsoft SQL Server in some instances renaming and/or linking a native document comprised of subparts will render the document unusable.  After meet and confer, the parties may agree to produce these types of documents in native form, accompanied with a bates number and MD-5 hash value, but separate from a litigation support database.  In those instances, if a propounding party or its experts lack access to proprietary software needed to review the producing party's ESI in native format, the parties will meet and confer to obtain a resolution which allows that party to view the affected documents.

(d)    Production of Pictures/Images.  Any photographic images created and/or maintained in electronic format will be produced in that format.

3.    Production Media.  The producing party will use the appropriate electronic media (CD, DVD or hard drive) for its ESI production, and will cooperate in good faith to use the highest-capacity available media to minimize associated overhead.  The producing party will label the physical media with the producing party, production date, media volume name, and document number range.

4.    Avoidance of Duplicate Production.  Each producing party will take all reasonable steps to reduce duplication of ESI.  De-duplication will be performed within a custodian.  The producing party will maintain references to all removed duplicate files.

F.    Privilege Logs.

The following categories of communications need not be listed on any party's privilege log:

(1)    Intra-law firm communications and/or memoranda;

(2)    Communications and/or memoranda exchanged solely between a party and its litigation counsel and that concern a claim or defense in this litigation;

(3)    Communications and/or memoranda among litigation counsel for Plaintiffs, or among litigation counsel for Defendants;

(4)    Communications and/or memoranda exchanged solely between a party's in-house counsel and that party (or in the case of a corporate party, those individuals whose

1  communications with counsel are privileged under Federal Rule of Evidence 501 and the cases

2  interpreting that rule) which consist exclusively of a request for, or giving of, legal advice to that

3  party; and

4          (5)     Communications and/or memoranda exchanged between party's counsel

5  and consultants retained by or on behalf of the party in connection with this litigation, including

6  but not limited to communications in which the party participates, unless the consultant is named

7  as a testifying expert and relies upon the subject document for any opinion rendered in this case.

8          G.      <u>Assertions of Privilege as to Inadvertently Produced Materials.</u>

9          A party (the "producing party") who inadvertently produces to another party (the

10  "receiving party") information for which the producing party is otherwise entitled to claim a

11  privilege or immunity, including but not limited to the attorney-client privilege or the attorney

12  work product immunity, will not be deemed to have waived that privilege or immunity because

13  of that inadvertent production.  Upon discovering that it has inadvertently produced privileged or

14  protected information, the producing party will promptly notify the receiving party in writing of

15  that inadvertent production and specify the nature of and basis for its claim of privilege or

16  immunity.  If the material is contained in a previously produced document that also contains

17  material that is not privileged or protected, the producing party will provide the receiving party

18  with a new copy of the document with the privileged or protected material redacted when it gives

19  notice of the claimed inadvertent production.  As soon as practicable after receiving the notice of

20  claimed inadvertent production, the receiving party will sequester the subject material, and if it

21  has disclosed the material before receiving the notice, will take all reasonable steps to retrieve

22  the material.  Within ten days after receiving notice of the claimed inadvertent production, the

23  receiving party will either: (a) destroy or return to the producing party all copies of the subject

24  material; or (b) notify the producing party that it contests the claim of privilege or immunity and

25  present a copy of the information to the Court under seal for resolution of the dispute.  The

26  producing party will bear the burden of proof on any claim of privilege or immunity.  After the

27  producing party gives notice of the claimed inadvertent production, and until the Court resolves

28  any dispute over the claim of privilege or immunity, the producing party must preserve the

1   material, and the receiving party may not use the material for any purpose.  If the subject

2   material is material the receiving party intended to use in connection with any motion,

3   opposition to motion, or reply, the receiving party may obtain an order extending the relevant

4   filing deadline by filing with the Court a declaration of counsel stating that the subject material

5   bears on the disposition of that motion.

6           H.      Depositions.

7           The parties will cooperate in deposition scheduling to limit travel time and expense to the

8   parties.  Except as otherwise separately agreed, the parties stipulate that depositions will be taken

9   at mutually convenient locations near the deponent's workplaces or residences.

10          The parties will cooperate in good faith to make efficient use of deposition time, but

11  understand and agree that because of the number of defendants, the number of potentially

12  knowledgeable employees of defendants, the number of percipient witnesses (whether identified

13  in a party's initial disclosures under Federal Rule of Civil Procedure 26, through a review of

14  publicly-filed documents, or otherwise), and the number of outside consultants, it will be

15  necessary to schedule more than ten depositions as provided under Federal Rule of Civil

16  Procedure 30(a)(2).  At this time, the parties agree that each side may take a total of 25

17  depositions without further stipulation of the parties or order of the court.

18          Should a party believe that additional depositions are necessary, it will identify the

19  deponent or deponents whose deposition it requests, and the parties will meet and confer in good

20  faith concerning the necessity for that deposition.  Neither party waives its right to request leave

21  of court pursuant to Federal Rule of Civil Procedure 30(a)(2) to take additional depositions.

22          The parties will cooperate in good faith to avoid having a person who may be designated

23  as an expert witness but who is also a percipient witness be deposed more than once.  Upon

24  notice that a party seeks to take the deposition of a person whom the opposing party

25  contemplates designating as a testifying expert, the opposing party will so notify the noticing

26  party.  The noticing party may not obtain the deponent's testimony on his or her expert opinions

27  until and unless that person is designated as an expert and provides his or her expert report or

28  reports.  The noticing party may take the deponent's deposition as a percipient witness at any

1   time prior the close of expert discovery, notwithstanding the close of fact discovery.  Should the

2   opposing party determine at any time that it will not designate the deponent as a testifying

3   expert, it must so notify the noticing party within five business days after making that

4   determination.  If that deponent has not been previously deposed as a percipient witness based on

5   the expectation that he or she would be deposed on his or her percipient knowledge and expert

6   opinions in a single deposition, the noticing party may take the deponent's deposition on the

7   earliest date that is mutually convenient to the deponent and counsel, giving consideration to the

8   case schedule and volume of documents on which the noticing party may examine that witness.

9   Should the deponent testify or produce documents concerning any fact issue after the parties

10  have exchanged expert reports, the noticing party's experts may amend their reports to reflect or

11  opine on the documents or testimony so provided.  Nothing herein will bar a party who does not

12  contemplate designating the deponent as an expert at the time the deposition notice issues from

13  later designating that person as an expert; provided, that in that event, a party who has not

14  designated the person as an expert will have the opportunity to take that person's deposition on

15  the matters subject to his or her expert opinion within the course of expert discovery.

16          I.      Expert Discovery.

17          The parties agree that the following categories of documents will not be subject to

18  production: (1) drafts of expert reports; and (2) communications between counsel and any expert.

19          J.      Amendment of Previously Served Discovery Requests.

20          Any discovery requests a party has served prior to the parties' agreement on the content

21  of the Joint Discovery Plan are hereby amended to incorporate its relevant terms.

22          K.      Discovery Deadlines.

23          The parties shall exchange expert reports by September 2, 2008 and any rebuttal reports

24  not later than October 2, 2008.  All fact discovery and expert discovery shall be completed no

25  later than November 3, 2008.  As to Defendants The Pacific Lumber Company, Scotia Pacific

26  Company LLC and Salmon Creek LLC, discovery shall commence June 1, 2008 or upon

27  confirmation of their reorganization, which ever occurs first.

28

1    THEREFORE, IT IS AGREED by Plaintiffs and Defendants, through their respective

2 counsel of record that, subject to Court approval, this shall serve as the Joint Discovery Plan in

3 this litigation.

4    IT IS SO AGREED.

5
DATED: April 3, 2008.                    **COTCHETT, PITRE & McCARTHY**
6

7                    _____/s/_____

8                    SEAN E. PONIST  (SBN 204712)
                     840 Malcolm Road, Suite 200
                     Burlingame, CA 94010
9
                     William G. Bertain  (SBN 70163)
10                   **LAW OFFICE OF WILLIAM G. BERTAIN**
                     1310 Sixth Street
11                   Eureka, CA 95501

12                   Paul N. "Pete" McCloskey, Jr.  (SBN 24541)
                     **LAW OFFICES OF PAUL N. McCLOSKEY, JR.**
13                   600 Allerton Street, Suite 202
                     Redwood City, CA 94063
14
                     *Attorneys for Plaintiff the United States of America*
15                   *ex rel. Richard Wilson and Chris Maranto*

16

17                   **MORRISON & FOERSTER, LLP**

18
                     _____/s/_____
19                   CHRISTOPHER J. CARR (SBN 184076)
                     425 Market Street
20                   San Francisco, CA 94105

21                   *Attorneys for Defendants*
                     *MAXXAM INC., The Pacific Lumber Company,*
22                   *Scotia Pacific Company LLC, Salmon Creek LLC,*
                     *and Charles E. Hurwitz*
23

24    I, Sean E. Ponist, am the ECF user whose ID and password is being used to file this Joint

25 Discovery Plan.  In compliance with General Order 45, X, B., I hereby attest that Christopher

26 Carr has concurred with this filing.

27

28



LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT DISCOVERY PLAN AND ORDER- CASE NO. C-06-7497**                    11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER**

Pursuant to the parties' agreed Joint Discovery Plan, it is SO ORDERED.

Dated: 4/7/08 _____.

_Claudia Wilken_

_____
HON. CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY