UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX. REL, ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MAXXAM, INC, ET AL.,<br><br>    Defendants.<br>_____/ | No. C 06-7497 CW (JL)<br><br>**DISCOVERY ORDER (re Docket #s 74, 75, 76, and 77)** |

### Introduction

All discovery in this case has been referred by the district court (Hon. Claudia Wilken) as provided by 28 U.S.C. §636(b) and Civil Local Rule 72. Plaintiffs previously filed a motion to compel initial disclosures and a motion for sanctions, which were withdrawn prior to the July 9, 2008 hearing date. The parties participated in private mediation, which terminated without settlement July 18.  Plaintiffs' motion for attorney fees and costs is calendared before this Court on October 15. Discovery cut-off is November 3.

The Court received the parties' statements regarding their discovery dispute, e-filed at Docket #s 74, 75 and 76. The parties met and conferred, but only counsel for Plaintiffs and Defendants MAXXAM, Inc. and Charles Hurwitz prepared a joint statement. No statement was provided on behalf of The Pacific Lumber Company, Scotia Pacific Company, LLC, Salmon Creek, LLC (collectively "Debtor Defendants"). Plaintiffs contend that the same arguments pertain to the Debtor Defendants as well.  The Pacific Lumber

Company, Scotia Pacific Company LLC and Salmon Creek LLC have filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas. The filing of that bankruptcy petition triggered an automatic stay of all judicial proceedings against them. See 11 U.S.C. § 362(a). Pursuant to §362 (d) of the Bankruptcy Code, a portion of the automatic stay was lifted by the Bankruptcy Court, for inter alia, the express purpose of permitting discovery against the Debtor Defendants in this federal qui tam action, as well as any state qui tam action. (Paragraph 3 of Agreement, at p. 4 of Stipulation and Order in Bankruptcy action, entered by Bankruptcy Court February 29, 2008, filed by Relators in this action at Docket # 49). The Debtor Defendants have since filed a notice of resolution of the Bankruptcy action, which will dissolve these corporate entities and transfer their assets to other entities and, they contend, relieve them of any discovery obligations in this case. The "MRC/Marathon Plan" effective date was July 30, 2008. (Notice filed August 11, 2008 at Docket # 72). This Court finds that, although the Debtor Defendants have not been dismissed with prejudice from this case, the action of the Bankruptcy Court effectively extinguishes their discovery obligations, since this order supersedes the Bankruptcy Court's previous order, lifting the automatic stay for that limited purpose. Accordingly, this Court has no jurisdiction to order discovery from the Debtor Defendants.

The Court also received the parties' request, e-filed at Docket # 77, for an expedited hearing, but finds the matter appropriate for decision without oral argument, pursuant to Civil Local Rule 7-1(b) and hereby denies the request for expedited hearing.

## Issues in Dispute

The parties disagree about (1) the terms of a proposed protective order governing confidential material; (2) in what format documents should be produced; and (3) whether Defendants need a protective order from the Court to prevent Plaintiffs from taking multiple depositions of defense witnesses.

**Argument re Terms of Protective Order**

Defendants propose to limit the use of any discovery produced for this litigation to Plaintiffs' pending qui tam lawsuits. They argue that William Bertain, one of Plaintiffs' counsel, has filed no fewer than a dozen lawsuits against these Defendants. Defendants argue that of Plaintiffs' 805 counsel discovery requests propounded since May 30, 2008, only 33% go to the merits of Plaintiffs' causes of action, that is, whether Defendants violated the False Claims Act ("FCA") by submitting a fraudulent Sustained Yield Plan ("SYP") to the State of California in connection with the historic 1996 Headwaters Agreement. Defendants object that the remainder of Plaintiffs' requests seek their sensitive business information. They accuse Plaintiffs of conducting a fishing expedition into Defendants' irrelevant corporate and financial affairs, which Plaintiffs intend to use for purposes other than prosecuting the pending FCA actions.

Plaintiffs agreed to stipulate to the model protective order for the Northern District, and argue that Defendants have stalled production of documents in the absence of a protective order. Plaintiffs neither admit nor deny that they intend to use these documents in other litigation.

**Analysis and Conclusion re Terms of Protective Order**

The disputed sentence of the proposed protective order states: "Receiving Party may not use Protected Material for any other purpose, including, without limitation, any other litigation or any business, competitive, or governmental purpose or function." Defendants also proposed a second sentence to address Plaintiffs' concern that the first sentence not preclude them from coordinating with the federal and state governments in prosecuting the instant civil actions.

The Model Stipulated Protective Order for the Northern District provides for two tiers of confidentiality for Protected Material which permits a responding party to designate its confidential discovery responses - - including documents, interrogatory answers and deposition testimony - - as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL: ATTORNEY'S EYES ONLY."

1   With regard to use of Protected Material in other litigation, Paragraph 8 of the Model
2   Stipulated protective Order for the Northern District provides:

3   8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.
4
5   If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," the Receiving Party must so notify the Designating Party, in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.
6
7
8

9   The Receiving Party also must immediately inform in writing the Party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.
10
11
12   The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.
13
14
15

16   With regard to the disposition of Protected Material after litigation concludes,
17   Paragraph 11 of the Model Stipulated Protective Order provides that, within sixty days of
18   the termination of litigation, all copies of Protected Material shall be either returned to the
19   producing party or, with their permission, destroyed.
20   Under such an order, during the pendency of this litigation, Plaintiffs would notify
21   Defendants if any of their confidential information had been requested or subpoenaed in
22   other litigation, giving Defendants the opportunity to object to the court having jurisdiction.
23   After the close of this action, Plaintiffs must either return all confidential information to
24   Defendants or destroy it. The Court finds that the model protective order provides adequate
25   protection for Protected Material, including sensitive business information.
26   Accordingly, the model stipulated protective order, with revisions agreed to by both
27   parties, and minus the provision limiting use of protected material to Plaintiffs' pending qui
28

1 tam action, shall be entered in this case. The parties shall submit their proposed protective
2 order to this Court on or before August 27, 2008.

### Argument re Format for Documents

Defendants ask the Court to permit them to produce documents in ".tiff" format. Tagged Image File Format (abbreviated TIFF) is a file format for storing images, including photographs and line art. Defendants argue that Plaintiffs' protests about the time and difficulty of converting documents from their native format to .tiff format are moot, since the documents Defendants collected and are reviewing for production have already been converted to .tiff format, and Plaintiffs have not shown a particularized need for production in native format.

Plaintiffs argue that, given the fraud-based claims in this case, it is essential that Defendants produce electronically stored information ("ESI") in its native format. Plaintiffs have alleged that Defendants improperly manipulated inventory, stocking, trigger conditions, growth and harvest rates. In short, Plaintiffs contend that Defendants cooked the books and falsified the numbers. Plaintiffs argue that they and their experts need to be able to analyze the alleged fraudulent documents themselves, not converted copies.

Plaintiffs rely on Rule 34(b), Federal Rules of Civil Procedure, and the Advisory Committee Notes, which instruct that a party may not produce ESI in such a manner as to create "unnecessary obstacles." Native format permits easy review and use; .tiff format creates the obstacles of unnecessary costs and delay from retyping information contained in spreadsheets, charts and other programs and recreating the formulas and calculations upon which the information and numbers are based.

Plaintiffs are concerned that Defendants offer to produce documents in .tiff but only in native format on a showing of special need. The discovery cut-off is less than three months away, and Plaintiffs argue that the need is now.

### Conclusion and Order re Format

The Court finds that Plaintiffs present a compelling reason for receiving documents in native format rather than .tiff. That is their need to evaluate whether the documents were

fraudulently created or altered. Converting a document to another format could well erase or obscure signs of such changes, creating obstacles to discovery of admissible evidence. Accordingly, Defendants' request to produce ESI in .tiff format is denied. Documents shall be produced when due in native format.

### Request for a Protective Order to Prevent Further Depositions

Defendants ask the Court to enter a protective order that Plaintiffs be permitted to take only one deposition of each of Defendants' witnesses.

Plaintiffs oppose this request. They argue that Defendants' statement requesting a protective order at this time is premature. Plaintiffs have not attempted to take a second deposition of any deponent. They contend that, in fact, because of Defendants' delay, they have yet to take even a first deposition of a defense witness in this case. Thus, Plaintiffs have not violated and do not intend to violate any court order or Federal Rule of Civil Procedure. To the extent that Plaintiffs may seek to take a second deposition of any witness, they would seek permission of the Court as required.

### Analysis and Conclusion re Depositions

This Court finds that the issue of second depositions of defense witnesses is not yet ripe for decision, when no depositions have yet been taken, and when Plaintiffs indicate that if they do seek second depositions, they will first seek permission from the Court. Accordingly, Defendants' request for a protective order that no second depositions be taken is denied without prejudice.

IT IS SO ORDERED.

DATED: August 20, 2008

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\06-7497\Order re 74, 75, 76, 77.wpd